United States Court of Appeals,

Fifth Circuit.

No. 94-60551.

In re In the Matter of the Libel and Petition of KRISTIE LEIGH ENTERPRISES, INC., as Owner of M/V KRISTIE LEIGH, et al., for Exoneration from or Limitation of Liability

In the Matter of the Libel and Petition of KRISTIE LEIGH ENTERPRISES, INC., as Owner of M/V KRISTIE LEIGH, et al., Plaintiffs.

GATEWAY TUGS, INC., as Owner Pro Hac Vice, of the M/V KRISTIE LEIGH, Plaintiff-Appellant,

v.

AMERICAN COMMERCIAL LINES, INC., Defendant,

Norma L. Castillo, Individually and as surviving spouse of Daniel Castillo, and as personal representative of the estate of Daniel Castillo, Deceased, and for and on behalf of all persons entitled to recover for the wrongful death of Daniel Castillo, and as next friend to Alisha Danielle Castillo, et al., Claimants-Appellees.

Jan. 12, 1996.

Appeal from the United States District Court For the Southern District of Texas.

Before KING, DAVIS and SMITH, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Following a collision between the tow of the M/V KRISTIE LEIGH and two outboard pleasure fishing vessels, resulting in loss of life and injury, Gateway Tugs, Inc., sought exoneration from or limitation of its liability.[1] Following a bench trial, the district court denied Gateway both exoneration and limitation.

---

[1]Kristie Leigh Enterprises, Inc., the owner of the tugboat, and Valley Line Co., the owner of the barges, were also parties to the litigation. The district court exonerated both companies at the close of trial. They are not involved in this appeal.

Gateway appeals only the latter decision.  We reverse the district court's denial of limitation and remand for further proceedings.

## I.

On May 9, 1992, the M/V KRISTIE LEIGH was pushing three empty barges through the Intracoastal Waterway (ICW) from Brownsville to Harlingen.  Rather than lashing the barges end to end, Captain Robert F. Rogers, Jr., the master of the tug, arranged them three-abreast with the tug pushing the center barge.  In this configuration, the KRISTIE LEIGH's tow was 105 feet wide and 195 feet long.  Its width, however, made it easier to maneuver in the strong crosswinds customary at that time of year.  The collision occurred just south of the intersection of the ICW with the Arroyo Colorado.  The navigable portion of the ICW is 150 feet wide at this point.

Because the wind forced the KRISTIE LEIGH's tow to travel at an angle, the barges filled the bulk of the channel.  Also, the position of the tow created a 500 to 600 foot blind spot for the operator stationed in the wheelhouse.

At approximately 7:30 a.m., Captain Rogers first spotted the two fishing boats anchored near the western edge of the channel, just south of marker 4.  They were more than a mile ahead.  As the KRISTIE LEIGH approached the boats from the south, Rogers estimated that he would miss the boats by only five or six feet.  Although he had two experienced deckhands available and a considerable blind spot, the captain did not post a lookout.  Nor did he signal a warning with his horn.  At approximately 7:45 a.m., the tow of the

2

KRISTIE LEIGH struck the fishing boats.

The district court denied exoneration to Gateway. The court concluded that Captain Rogers' violations of Rules 5, 9, and 34 of the Inland Navigational Rules (INR), 33 U.S.C. §§ 2001-73 (1987), constituted fault which caused the accident. Specifically, Rogers failed to post a lookout under circumstances requiring such action. *See* 33 U.S.C. § 2005 (Rule 5). He did not keep as far to the starboard side of the channel as possible. *See* 33 U.S.C. § 2009(a)(i) (Rule 9). And he did not sound a danger signal to warn the pleasure craft to take evasive action. *See* 33 U.S.C. § 2034 (Rule 34). Despite ruling that Captain Rogers' negligence caused the accident, the district court did not find him incompetent.

The district court, nonetheless, denied Gateway limitation. It charged the company with constructive knowledge of Captain Rogers' negligence on grounds that neither its president nor its port captain possessed enough expertise to determine whether the ships' masters they employed acted reasonably. The court found they were in no position to evaluate how tows should be configured or whether additional crew were needed for a larger-than-usual load. The company, moreover, "made no efforts to ensure compliance with [the INR] by its captains." Finally, the court found Gateway negligent for failing to hold safety meetings, enact safety policies, or make any inquiry into their captains' operational decisions. Therefore, the district court concluded, Gateway bore " "complicity in the fault' for Captain Rogers' negligence" and was not entitled to the protection of the Limitation of Liability Act.

II.

The only question this case presents is whether the district court erred by denying Gateway the right to limit its liability.

Section 183(a) of the Limitation of Liability Act provides in relevant part:

> The liability of the owner of any vessel ... for any loss, damage, or injury by collision ... incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

Once a claimant proves that negligence or unseaworthiness[2] caused an accident, an owner seeking limitation must show it lacked privity or knowledge of the condition. *Cupit v. McClanahan Contractors, Inc.,* 1 F.3d 346, 348 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1058, 127 L.Ed.2d 378 (1994). A corporate owner, however, will not satisfy its burden by merely demonstrating ignorance. It is charged with the knowledge of any of its managing agents who have authority over the sphere of activities in question. *Cupit,* 1 F.3d at 348 (quoting *Coryell v. Phipps,* 317 U.S. 406, 410, 63 S.Ct. 291, 293, 87 L.Ed. 363, 367 (1943)).

The case before us raises a narrow question. The appellant does not contest the district court's finding that Captain Rogers' negligence caused the collision. And both parties accept the court's determination that Rogers did not occupy a high enough position in Gateway's organization so that Rogers' negligence is

_____

[2]Unseaworthiness is not an issue in this case. The district court concluded that the duty to provide a seaworthy vessel did not extend to these claimants because they were not doing seaman's work. That holding has not been appealed.

4

imputed to it. The only issue we address, therefore, is whether the district court erred in concluding that Gateway could not limit because it failed to exercise reasonable diligence in discovering similar navigational errors Captain Rogers had made earlier and because it did not provide better training and supervision.

We have found no decision of the Supreme Court or this court that supports denial of limitation under the facts as found by the district court. In *Coryell v. Phipps,* 317 U.S. 406, 412, 63 S.Ct. 291, 294, 87 L.Ed. 363, 368 (1943), the Court held that "[o]ne who selects competent men ... and who is not on notice ... cannot be denied the benefit of ... limitation." In *Mac Towing, Inc. v. American Commercial Lines,* 670 F.2d 543, 548 (5th Cir.1982), we noted that "[o]rdinarily "errors in navigation or other negligence by master or crew are not attributable to (the shipowner) for limitation purposes.' "

In *Continental Oil Co. v. Bonanza Corp.,* we stated: "[N]o court has previously denied a corporate shipowner limitation of liability for a master's navigational errors at sea when the owner has exercised reasonable care in selecting the master." *Continental Oil Co. v. Bonanza Corp.,* 706 F.2d 1365, 1377 n. 15 (5th Cir.1983) (en banc) (Rubin, J.).

In *Tittle v. Aldacosta,* 544 F.2d 752, 756 (5th Cir.1977), we stated that:

> Ordinarily [limitation] is to afford protection to the physically remote owner who, after the ship breaks ground, has no effective control over his waterborne servants. Thus the errors in navigation or other negligence by master or crew are not attributable to him on respondeat superior for limitation purposes. In the typical situation of a corporate owned ocean

5

vessel the privity and knowledge scrutiny focuses in on whether the shore-based high-levelled management is aware (or should have been) of the likelihood of the occurrence happening after the ship is underway.

The district court did not find that Captain Rogers was an incompetent master, and the record would not support such a finding. Captain Rogers was a properly licensed tug captain with over thirty years of experience. With the exception of one accident, Captain Rogers had a clean record.[3] No evidence suggested that Gateway knew or should have known that Captain Rogers had previously committed navigational errors. Without knowledge by Gateway that its captain was inadequate or unsafe the record does not support a conclusion that Captain Rogers was incompetent and needed additional training or instruction in performing his duties. Language of the Ninth Circuit in *The G.K. Wentworth,* 67 F.2d 965, 966 (9th Cir.1933) is particularly instructive in this respect:

> It seems to us that the fact that the G.K. Wentworth was a river towboat navigating inland waters does not place it in a different light, and an owner who has appointed a competent shipmaster is entitled to rely on his judgment in the navigation of the ship, and should not hamper the further exercise of his judgment with instructions and orders....

> The ability and experience of the captain and the other officers of the Wentworth are not challenged. It was proper for the owners to entrust the management of the vessel to them. The appellant had the right to rely upon the fact that this competent master would observe the rules of navigation, which he well knew....

The principal authority appellees rely on, *Hercules Carriers,*

---

[3]Captain Rogers' license was once suspended for one month after he allowed his tow to collide with the Brazos Locks floodgates, believing them to be open.

*Inc. v. Claimant State of Florida,* 768 F.2d 1558 (11th Cir.1985) is readily distinguishable. In that case, before the vessel put out to sea the owner should have known that the crew failed to meet the licensing requirements. As the Fourth Circuit points out, the fact that the vessel's crew was not properly licensed was imputable to the owners and put it on notice that its vessel was unseaworthy. *Hellenic Lines, Ltd. v. Prudential Lines, Inc.,* 813 F.2d 634, 639 (4th Cir.1987). In contrast, Gateway had no knowledge that Captain Rogers was in any way inadequate as a master. The record does not suggest that any complaints were ever filed against him or that anyone ever reported to Gateway that Captain Rogers had improperly navigated his vessel. An employee's negligence at sea, without more, is not enough to deny limitation. *See* Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* 894-95 (2d ed. 1975) ("So long as the Limitation Act is on the books, the owner will of course be entitled to limitation for events which occur during the voyage which lie beyond the possibility of his control.")

In short, the record presents no justification for departing from the well established rule that, for limitation purposes, an owner may rely on the navigational expertise of a competent ship's master. We therefore reverse the district court judgment denying Gateway's petition to limit its liability and remand this case for further proceedings consistent with this opinion.

REVERSED and REMANDED.